**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Zewei Chen, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:24-cv-11906 |
| v. | ) | |
| | ) | Dist. Judge Charles P. Kocoras |
| The Partnerships and Unincorporated | ) | |
| Associations Identified in Schedule A, | ) | Mag. Judge Keri L. Holleb Hotaling |
| | ) | |
| Defendants. | ) | |

**Defendants' Motion to Vacate the Temporary Restraining Order**

**NOW COME** defendants Annexfun and CheungPrint, (hereinafter "Defendants"), by and through their undersigned counsel, and hereby move to vacate the temporary restraining order in its entirety.

I.  **Introduction**

Defendants have provided evidence that the MINE MAGNET WORLD Mark is invalid because it is merely descriptive and lacks secondary meaning. Accordingly, Plaintiff has no likelihood of success on the merits and the TRO currently in place should be dissolved for this reason alone. *See*, LG Elecs. Inc. and LG Elecs. Alabama Inc v. The P'Ships, et al., No. 21-cv-2600, [Dkt. 37] (N.D. Ill. June 17, 2021) (dissolving TRO on emergency basis and ordering that Amazon.com "**immediately** unfreeze and relist on Amazon.com the Moving Defendants' Amazon storefront accounts previously frozen by order of this court") (emphasis in original).

Moreover, the asset restraint currently in place from the TRO is overbroad for Defendant Annexfun and, if not vacated in its entirety, at the very least should be reduced to the amount that may possibly be recovered through an equitable account of Defendant Annexfun's profits from the accused product.

II.  **Argument**

Courts within this District hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc., 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). Like a TRO, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Further, the injunctive order should also be tailored to the violation. Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd., 496 F.3d 769, 772 (7th Cir. 2007). In order to properly receive a preliminary injunction or a TRO, Plaintiff must have demonstrated by a clear showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the

issuance of a preliminary injunction would not disserve the public interest." Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984), *citing*, In re Uranium Antitrust Litigation, 617 F.2d 1248, 1261 (7th Cir. 1980). The movant "bears the burden of persuasion with regard to each factor in the preliminary injunction relief analysis" and if it "fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." Smith v. Foster, 2016 WL 2593957 (E.D. Wis. May 5, 2016), *quoting*, Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir. 1989).

> **a. Plaintiff cannot show a reasonable likelihood of success on the merits because the asserted MINE MAGNET WORLD trademark is unprotectable and should be cancelled for certain goods.**

Here, the only asserted trademark that Defendants arguably use is "MINE MAGNET WORLD," however this mark is invalid and should be cancelled. Courts have the authority to cancel invalid trademarks. 15 U.S.C. § 1119; Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles, 2012 WL 3686776 at *11 (N.D. Ill. Aug. 24, 2012) ("Pursuant to 15 U.S.C. § 1119, federal courts may cancel registration of a trademark when warranted."). Indeed, the Seventh Circuit has made it clear that where, as here, "a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course." Cent. Mfg., Inc. v. Brett, 492 F.3d 876, 883 (7th Cir. 2007). A registered mark may be canceled at any time for genericness; a descriptive mark may be canceled if the challenger shows that it lacks secondary meaning and provided the mark has not become incontestable by remaining in continuous use for five years from its date of registration. Uncommon, LLC v. Spigen, Inc., 305 F. Supp. 3d 825, 854 (N.D. Ill. 2018).

Plaintiff's "MINE MAGNET WORLD" mark was registered September 3, 2024, less than five years ago, thus the mark has not become incontestable, and the Court may cancel this merely descriptive mark. Plaintiff's registered mark is entitled to a presumption of validity, however

Page **2**

Defendants may overcome that presumption "with evidence that the mark is generic or descriptive, or that it lacks secondary meaning." Uncommon, LLC, 305 F. Supp. 3d at 854, *citing*, Packman v. Chicago Trib. Co., 267 F.3d 628, 639 (7th Cir. 2001). Defendants bear the burden of demonstrating that the mark is either generic or descriptive, and, if descriptive, that it lacks secondary meaning. Id. Courts classify marks into five categories of increasing distinctiveness: (i) generic; (ii) descriptive; (iii) suggestive; (iv) arbitrary; and (v) fanciful. Box Acquisitions, LLC v. Box Packaging Prod., LLC, 32 F. Supp. 3d 927, 934 (N.D. Ill. 2014).

The level of protection to which a mark is entitled depends on where it falls on the spectrum of distinctiveness, the least distinctive being the "generic" mark to the most distinctive being the "fanciful" mark. Id. The critical distinction here is whether Plaintiff's MINE MAGNET WORLD mark is descriptive or suggestive, because descriptive marks are only entitled to copyright protection when it becomes distinctive or "acquires secondary meaning" whereas a suggestive mark is entitled to protection without needing to show secondary meaning. Id. A descriptive mark "ordinarily names a characteristic of a product or service". Sorensen v. WD–40 Co., 792 F.3d 712, 724 (7th Cir. 2015). When determining whether a mark is descriptive, the Court must consider the "*commercial impression* of a mark as a whole, viewed through the eyes of a consumer" and "consider the mark *in relation to the goods for which it is registered*, asking whether someone who knows what the goods and services are will understand the mark to convey information about them." Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc., 906 F.3d 965, 974 (Fed. Cir. 2018) (internal citations omitted) (emphasis added). Notably, however, "[a] term need not bring to mind the product in question to be descriptive, nor must it depict the product itself," but rather, to be descriptive, the mark only needs to "refer[] to a characteristic of the product." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 423 (7th Cir. 2019) (internal citations omitted); *see also*, Kc Brangs Food & Beverage Co. LLC, 2013 WL 3168086 at *2 (May 24, 2013) ("the question is not whether someone presented only with the mark

could guess the products listed in the description of goods. Rather, the question *is whether someone who knows what the products are will understand the mark to convey information about them*.") (emphasis added). A suggestive mark, on the other hand, "does not directly and immediately describe an aspect of the goods," but rather it "requires an observer or listener to use imagination and perception to determine the nature of the goods." Id. at 421.

Here, Plaintiff's MINE MAGNET WORLD trademark is at most merely descriptive of the magnetic building blocks since the term specifically describes a characteristic of the block sets that are sold by Defendants under the MINE MAGNET WORLD trademark. To prove descriptiveness, parties may offer dictionary definitions, evidence on the term's use in the relevant industry, or direct evidence of consumer perceptions. Uncommon, LLC, 305 F. Supp. 3d at 855. Here, the term MINE is merely an abbreviation of the popular video game "MINECRAFT," and is clearly descriptive of the design and look of the blocks used in Plaintiff's magnetic toy building sets, which are specifically designed to look like those used in the Minecraft video game. Minecraft is the highest selling video game of all time and has sold over 300 million copies[1], and the general public, particularly the large number of children who play Minecraft and would play with the magnetic toy block goods covered under Plaintiff's MINE MAGNET WORLD trademark, would recognize MINE as imparting information as to the design and look of the building blocks of Plaintiff's goods. Minecraft has a unique design style that uses cubes to represent various materials, and the game allows platers to move the blocks around and build things. An example of the Minecraft world and design is shown below in Figure 1.

---

[1] https://www.theverge.com/2023/10/15/23916349/minecraft-mojang-sold-300-million-copies-live-2023

Page 4



**Figure 1**

Notably, it is "well-established that descriptiveness of a mark is not considered in the abstract," but instead, the mark must be considered "in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1378 (Fed. Cir. 2012); *see also* Kc Brangs Food, 2013 WL 3168086 at *2 ("Whether a particular term is merely descriptive is determined in relation to the goods and services for which registration is sought and the context in which the term is used, not in the abstract or on the basis of guesswork."). Following, in analyzing descriptiveness, the Court may "look to the Applicant's specimens and other evidence of record showing how the designation is actually used in the marketplace to determine how the designation would be perceived by the relevant public." In re Vox Populi Registry Ltd., 25 F.4th 1348, 1351 (Fed. Cir. 2022); In re N. Carolina Lottery, 866 F.3d 1363, 1367 (Fed. Cir. 2017) (noting that "for purposes of analyzing descriptiveness, this court's precedent allows consideration of specimens, such as advertising materials, showing how a mark is used."). Notably, the specimen provided in support of Plaintiff's MINE MAGNET WORLD trademark application shows products that use the exact same cube building style in Figure 1, which gives it a nearly identical look as the building

Page 5

style in Minecraft. A true and correct copy of the specimen deposited with Plaintiff's MINE MAGNET WORLD trademark is attached hereto as **Exhibit 1** and an image taken from the specimen is included below in Figure 2.



**Figure 2**

Accordingly, when the term MINE is descriptive when properly considered in relation to the goods shown in the specimen of Plaintiff's Mark, since an average purchaser would understand the term MINE to specifically describes characteristics of Plaintiff's block products, which are cubes designed just like the blocks in the immensely popular Minecraft the video game. Coach Servs., Inc., 668 F.3d at 1378 (noting that for evaluating descriptiveness of a mark, it must be considered "in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use."); Real Foods Pty Ltd., 906 F.3d at 974 (When determining whether a mark is descriptive the Court must and "consider the mark in relation to the goods for which it is registered, *asking whether someone who knows what the goods and services are will understand the mark to convey information about them*.")(internal citations omitted) (emphasis added).

It should also be noted that MINECRAFT is a federally registered trademark, thus Plaintiff could almost certainly not have gotten a trademark registration for "MINECRAFT MAGNET WORLD", however, the fact that the mark uses the abbreviation MINE, rather than MINECRAFT does not make it any less descriptive because the term MINE, when considered in relation to the goods shown in the specimen of Plaintiff's Mark, still conveys the descriptive connotation of the term MINECRAFT. G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985 (7th Cir. 1989) (holding that "L.A." was a descriptive term since it was the abbreviation of low alcohol for beer); George & Co. LLC v. Imagination Ent. Ltd., 575 F.3d 383. 394-95 (4th Cir. 2009) ("An abbreviation of a descriptive term which still conveys to the buyer the descriptive connotation of the original term will still be held to be descriptive."); Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2014 WL 857947 at *12 (D. Md. Mar. 4, 2014) ("Initials for a descriptive phrase merely represent short forms of the words for which they stand and should receive the same degree of protection as those words.") (internal citation omitted).

Moreover, although the term "MAGENT" is disclaimed from the trademark and "no claim is made to the exclusive right to use" the term MAGNET "apart from the mark as shown" it is also descriptive because, as shown in **Exhibit 1**, Plaintiff's building block products are held in place by magnets, thus the term describes a characteristic of Plaintiff's block products. Lastly, the term "world" is also descriptive because Plaintiff's magnetic blocks allow a customer to build a world with them, including trees, houses, animals, and other features. As discussed *supra*, "[a] term need not bring to mind the product in question to be descriptive, nor must it depict the product itself," but rather, to be descriptive, the mark only needs to "refer[] to a characteristic of the product." Uncommon, LLC, 926 F.3d at 423 (internal citations omitted). Here, MINE MAGNET WORLD, as a whole, refers to and directly imparts information about characteristic of Plaintiff's toy building block sets, namely that the sets allow a user to build a world resembling a world in Minecraft, with

Page 7

Minecraft-like blocks that are connected using magnets. Uncommon, LLC v. Spigen, Inc., 305 F. Supp. 3d 825 (N.D. Ill. 2018), aff'd, 926 F.3d 409 (7th Cir. 2019) (finding the mark "CAPSULE" was descriptive as applied to cell phone cases because it "specifically describes a characteristic" of cell phone cases); Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481, 483 (7th Cir. 2007) (holding that "Work-N-Play" as a name for vehicles with convertible interiors was descriptive: not because consumers quickly associate "Work-N-Play" with interior-convertible vans, but because the vans were in fact "usable both for work and play."); Tarsus Connect, LLC v. Cvent, Inc., 452 F. Supp. 3d 1334 (N.D. Ga. 2020) (finding the mark "CONNECT MARKETPLACE" was descriptive because it describes a precise characteristic and quality of the trade show industry - *i.e.*, the act of joining consumers at a common location); Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519 (11th Cir. 1991) (finding that the term "Investacorp" was descriptive because it "literally convey to the observer that appellant is in the business of investing in corporations. Because the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination, the term cannot be considered a suggestive term."); Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623 (6th Cir. 2002) (affirming the district court's conclusion that the trademark "Therma-Scan, Inc." was descriptive because it described services that Therma-Scan performed, i.e., performing infrared thermal-imaging examinations of the human body.). Because the term MINE MAGNET WORLD is merely descriptive of the products to which it has reference because it is simply used to describe and refer to characteristics of the goods.

A descriptive term may only be protected if it has acquired secondary meaning. Uncommon, 305 F. Supp. at 856. "Secondary meaning exists only if most consumers have come to think of the word not as descriptive at all but as the name of the product." Id., *citing*, Packman, 267 F.3d at 856. Courts generally review a number of factors to determine whether secondary meaning has been established, however, given the early stage of the current case and without any discovery obtained

from Plaintiff, evidence of these factors is currently unavailable to Defendants. Id. Plaintiff's motion for a temporary restraining order is currently sealed, however, on information and belief, Plaintiff's motion for entry of the temporary restraining order does not advance its mark's secondary meaning. [Dkt. 8]. Moreover, Plaintiff's Complaint only states, in a conclusory fashion, that "Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting Plaintiff's Brand Products, that the "Mark has been widely promoted," and that "Plaintiff's Mark is a symbol of Plaintiff's quality, reputation and goodwill." [Dkt. 1 at ¶¶ 7, 13, 16, 17].

A mark acquires secondary meaning when it has been used "so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark." Platinum Home Mortg. Corp., 149 F.3d at 728. Here, Plaintiff has provided no facts or evidence showing that MINE MAGNET WORLD has "come to mean" goods, including "jigsaw puzzles, magnetic building blocks being toys, toy building blocks, toy building structures, toy construction sets, and/or toy models sourced by Plaintiff in the minds of customers. In fact, the term MINE MAGNET WORLD had been widely utilized by other sellers in the online marketplace before Plaintiff's began using the MINE MAGNET WORLD mark on December 7, 2023, which indicates a lack of secondary meaning. *See* Declaration of Chan Cheung at ¶ 3, Exhibit A; Man Decl. at ¶ 3, Exhibit A. Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 393 (7th Cir. 1992) ("evidence of third-party use of the 'JET' formative casts further doubt on Spraying Systems' assertion of secondary meaning."); CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 685 (7th Cir. 2001) (noting that evidence of third-party use can weaken a party's mark); Uncommon, LLC, 305 F. Supp. 3d at 856 ("if the period of Plaintiff's exclusive use is less than a year (as evidenced by Plaintiff's first use in 2009 and Defendant's 2010 introduction of Capsule products), that fact provides a significant

reason to doubt that the mark achieved secondary meaning,"); Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc., 909 F.3d 1110, 1120 (Fed. Cir. 2018) ("The secondary meaning analysis primarily seeks to determine what is in the mind of consumers as of the relevant date, and [the use factor] must be applied with this purpose in view. The most relevant evidence will be the trademark owner's and third parties use in the recent period before first use or infringement."). Moreover, Plaintiff only first began using the mark MINE MAGNET WORLD on December 7, 2023, which casts serious doubts upon the very possibility of establishing secondary meaning in that short period of time, Uncommon, LLC, 305 F. Supp. 3d at 856 ("Plaintiff has, at best, used the term for under eight years; even though it is not impossible that secondary meaning could arise in that time, this case falls closer on the spectrum to five years (which casts 'serious doubt upon the very possibility' of establishing a 'strong secondary meaning')). Accordingly, given the evidence of third-party use of the term MINE MAGNET WORLD, and Plaintiff's relatively short period of using the MINE MAGNET WORLD Mark, it is clear that customers have not come to think of the term MINE MAGNET WORLD as the name or source designation of Plaintiff's products. Accordingly, since Plaintiff's asserted MINE MAGNET WORL Mark is merely descriptive to their products and lacks secondary meaning, the asserted MINE MAGNET WORLD Mark is unprotectable and Plaintiff has no reasonable likelihood of success on the merits. Id. at 857(Because Plaintiff's mark is merely descriptive and lacks secondary meaning, it is invalid, which makes cancellation the best course"); Scandaglia v. Transunion Interactive, Inc., 2010 WL 3526653 at *8 (N.D. Ill. Sept. 1, 2010) ("the Court holds that the mark is descriptive and lacks secondary meaning and therefore is not protectable."). Because Plaintiff's asserted mark is not protectable, Plaintiff cannot show a likelihood of success on the merits and the TRO currently in place should be vacated in its entirety.

**b. At the very least, the asset restraint should be limited to the amount that may possibly be recovered through an equitable accounting of Defendant Annexfun's profits from the accused products.**

Although, as discussed in section b, the asset restraint should be dissolved in its entirety, at the very least, this Court should limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting. The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages." Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Seventh Circuit as well. *See*, CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); *See also*, Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief, where they are narrowly drawn and Limited only to what is reasonably necessary to secure the (future) equitable relief." Deckers Outdoor Corp. v. P'ships, et al., 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013).

Applying these principles, any prejudgment asset freeze should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case i.e., those which were earned through the sales of the accused products. 15 U.S.C. § 1117; Cengage Learning, Inc. v. Doe 1, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); *see also*, Deckers, 2013 WL 12314399, at *2 ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific

Page **11**

amount, and no more… In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto, 2022 WL 3081869 at *3 (N.D. Ill. Aug. 3, 2022) ("A preliminary asset freeze cannot be imposed to preserve [Plaintiff]'s ability to collect any judgment it later obtains."); Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.) (the purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits.").

At the time Plaintiff's *ex parte* motion for entry of a TRO was filed and the TRO was entered, Plaintiff would have had little to no information of Defendants' sales of the identified, accused product, including revenues earned therefrom. However, this is no longer the case and has not been the case since Plaintiff ostensibly received expedited discovery from the platforms. While the robustness of disclosures varies from platform to platform, in response to a TRO in a typical Schedule A case, Amazon, Walmart, eBay, and Temu, among others, will report the sales of the accused item, for each defendant, back to the plaintiff along with the defendant's email address and other registration information. Whatever these sales figures are, for each defendant and absent, for example, evidence of costs of goods, shipping, or other debits therefor, they amount to the maximum amount retrainable under Rule 65 based on the evidence before the court at that time. Because the amount of the "[maximum] profits is known, then the asset freeze should apply only to that specific amount and no more." Antsy Labs, LLC v. Individuals, et al., 2022 WL 17176498 at *4 (N.D. Ill. Nov. 23, 2022). Plaintiff has no equitable interest in particular restrained assets, as they are not the proceeds of the allegedly infringing activities. Micnerski, 2002 WL 31415753, at *1 ("federal

Page **12**

district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"); *see also* Simport Plastiques, Ltd. v. Imprint Genetics Corp., 2008 WL 11470805 at *2 (S.D. Fla. July 30, 2008), *report and recommendation adopted*, 2008 WL 11470806 (S.D. Fla. July 30, 2008) ("A District Court can order an asset freeze as part of preliminary injunctive relief only with respect to assets in which an equitable interest is claimed and established."). The Platforms have already identified the activities which, Plaintiff argues, are the proceeds of the (allegedly) infringing activity identified by Plaintiff, and Plaintiff provides no further evidence to support restraining any further funds under Rule 65. *See*, tinyBuild, LLC v. The Partnerships et al., 24-cv-02413 Dkt. 26 (N.D. Ill. May 7, 2024) (finding that Plaintiff had not met its burden of establishing that it was entitled to a prejudgment asset restraint on all funds in defendants accounts where Plaintiff had received expedited discovery from the platforms on defendants' sales and reducing prejudgment asset restraint to a number closer to the revenue amounts provided by the Amazon platform to Plaintiff); "); F.T.C. v. Trudeau, 579 F.3d 754, 773 (7th Cir. 2009) ("The [Plaintiff] bears the initial burden of establishing the baseline figure: a reasonable approximation of losses, gains, or some other measure the court finds appropriate. Then the burden shifts to the defendant to show that those figures were inaccurate."); F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("**The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-Appellant's ill-gotten gains**.") (emphasis added); F.T.C. v. Verity Int'l, Ltd., 443 F.3d 48 (2d Cir. 2006) (adopting a "two-step burden-shifting framework for calculating the size of disgorgement relief" which requires [Plaintiff] to first show that its calculations reasonably approximated' the amount of the defendant's unjust gains"); Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341, 358-59 (D.N.J. 2020) (noting that "[Plaintiff] has the burden what profits it seeks to disgorge based on the claims asserted in its complaint" and denying request for asset freeze where plaintiff failed to show

Page **13**

that all funds in defendant's accounts were from the products which infringed plaintiff's trademark); Simport Plastiques, Ltd. v. Imprint Genetics Corp., 2008 WL 11470805 at *2 (S.D. Fla. July 30, 2008), report and recommendation adopted, 2008 WL 11470806 (S.D. Fla. July 30, 2008) ("A District Court can order an asset freeze as part of preliminary injunctive relief only with respect to assets in which an equitable interest is claimed and established.").

A defendant will necessarily have a burden to establish its costs, in the interest of arriving at a calculation of profits: i.e., the equitable remedy being preserved by the injunction. *See e.g.,* Monster Energy Co. v. Chen Wensheng et al., 136 F. Supp. 3d 897, 910 (N.D. Ill 2015). However, the transactions which led to these profits must still be subject to the Plaintiff's claims, and Defendants' burden to offset sales revenue of identified, accused products with cost information has ballooned into an obligation to offset Plaintiff's scant evidence of the products at issue. Defendants, like most involved as defendants in Schedule A cases, sell many different products the vast, vast majority of which are unrelated to Plaintiff's claims as Plaintiff ostensibly understands from the outset of the case, and then again once it receives sales data from the platform. Plaintiff has the evidentiary burden to make a clear showing that it is entitled to the relief it is seeking under Rule 65. Winter v. Nat. Res. Def. Council, Inc., 129 S. Ct. 365, 375, (2008); Harlem Algonquin LLC v. Canadian Funding Corp., 742 F. Supp. 2d 957, 959 (N.D. Ill. 2010). To the extent that relief includes restraining funds from the sales of products other than the accused products, Plaintiff hasn't met that burden.

Defendant Annexfun nevertheless provides documentary proof, including sales records of the allegedly-infringing products supported by the attached Declaration of Share Pok Man. Defendant Annexfun has more than $131,344 frozen in their accounts compared to a total revenue and maximum equitable award of $13,913 from sales of the allegedly infringing products. Man Decl. ¶¶ 4-5. There is no basis for including amounts in Defendant's accounts beyond this respective

dollar amount, and the asset restraint should be reduced to, at most, Defendant Annexfun's revenue from sales of the accused product: $13,913. Shenzhen Dejiayun Network Tech. Co., Ltd. v. The P'ships, 21-cv-06607, [Dkt. 56] (N.D. Ill. Mar. 28, 2022) (granting motion to modify the preliminary injunction in part and reducing asset restraint based on defendants submitting sales records of the accused products supported by declaration); Toho Co., Ltd. v. The P'ships, 23-cv-00720, [Dkt. 55] (N.D. Ill. Mar. 28, 2022) (issuing show cause order to plaintiff as to why the asset restraint should not be reduced to roughly the revenue of the accused products in response to defendant submitting sales records of the accused products supported by declaration); Awareness Avenue Jewelry LLC et al v. The P'ships, 23-cv-00002, [Dkt. 75], (M.D. Fl. May 19, 2023) (modifying preliminary injunction to eliminate the asset restraint as a result of defendant submitting evidence that their profit from the allegedly infringing sales was minimal).

### III. Conclusion

With the benefit of adversary briefing, this Court can see that the asserted MINE MAGENET WORLD trademark is unprotectable. Accordingly, Plaintiff cannot show a likelihood of success on the merits of their claims to warrant the extraordinary relief afforded under Rule 65, and TRO currently in place should be vacated in its entirety.

Dated this December 9, 2024

Respectfully Submitted,

/s/Brian Swift
Brian Swift
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
brians@au-llc.com
adamu@au-llc.com
*Counsel for Defendants*